May it please the Court, Erica Schickinoff for Appellant. Before I begin I'd like to reserve two minutes for rebuttal and I would note that pursuant to approval of a prior motion the EEOC is taking five minutes of our time. Appellant comes before you today asking for a remand and new trial based upon the trial court's failure to acknowledge the proxy theory of liability in a Title VII harassment case. What's our standard of review? It is our position that the standard of review is plenary because the jury instructions that were provided contained an error of law by not providing a proxy instruction. I understand that our opponent is arguing that the standard of review is an abuse of discretion standard and I'm happy to make points on that in either direction but would note because of the error of law that is present here by the jury not hearing that standard the point is moot because it is our position that we meet the abuse of discretion standard regardless. If it was preserved, I think you're right, but there's an issue about whether or not the objection was preserved. Can you cite in your brief the parts of the, I guess it's an in-camera comment you have with the judge about the about the jury charge that it looks like you did preserve the objection to the charge or I'm happy to discuss the preservation issue with regard to the issue being preserved. We dealt with this matter at the summary judgment level. We raised the issue in our pretrial memorandum. We raised the issue in a bench brief following the pretrial memorandum. We raised it in arguments during the tendency of the trial on the record and then again on the record at the charging conference. Counsel has attempted to raise an issue that the objection was not preserved because we didn't also object to the verdict sheet itself. The issue here though is not with the verdict sheet. Our objection was to the fact that the jury received an improper and inadequate jury charge with regard to the Farragher-Ellis issue. Our objection... You said two things, improper and inadequate. It may well be inadequate but it wasn't improper as given the defense that you wanted, was it? I'm so sorry. It wasn't improper. That's the alternative theory of liability, the alter ego theory. It wasn't... That's correct, your honor. Our argument is that it was inadequate, that it contained an error of law because it did not acknowledge the proxy theory of liability. Okay. With regard to the issue with the verdict sheet, there was nothing internally inconsistent with the verdict sheet. There was nothing problematic with the verdict sheet, right? I'm sorry. If the judge isn't going to charge on it, he's not going to put it on a verdict sheet. Exactly. So there wasn't really an objection to us, for us to make to the verdict sheet and furthermore, there isn't anything that could have been added to that verdict sheet in terms of additional interrogatories being posed to the jury that would have cured the fact that the jury was not receiving a proxy instruction. I could have, you know, our opponent argued in their brief that we should have asked for a proxy interrogatory on the verdict sheet regardless of whether or not the jury was receiving that instruction. That would have been nonsensical because that would be the same thing as me asking the court to put a res absoluquitor inquiry on the sheet. The jury doesn't know what it is because they haven't received that instruction. So there really wasn't any point in us asking for additional interrogatories on that verdict sheet when the court had made it clear at every point in time that we had raised this objection, which we had raised so many times, but the trial court actually instructed us on the record that there can be no doubt that the objection was preserved for appeal. Did Ms. Barbunas testify? I'm sorry? Ms. Barbunas, I'm not sure I'm pronouncing that correctly. Did she testify? She did testify, yes. Okay, so the only issue was that one episode regarding sleeping with a knife and the objection to that that was sustained. That's really the only issue regarding her testimony? That is correct. With regard to the 403 issue and the abusive process issue, I'm happy to have those arguments before the court, but it would be our intention to focus on the proxy issue because I do think that that is probably the issue that is most pressing and interesting to the court. I agree. Focus on the alter ego issue. The 403B issue is not, at least with me, it doesn't really concern me. Well, let's assume you're right in this opinion, right, and we agree with you. How would you want us to define, or what instructions would we give a jury to determine if somebody was really the alter ego or the proxy? I think that you can find that language right in Farragher and Ehlers. A proxy is somebody who is a harasser supervisor who is sufficiently high enough within the ranks of the organization so that they could be held to be the proxy or alter ego of the organization, and I think if we look at some of the decisions that were raised in the other circuits, the Johnson v. West case is one that sets out a very specific definition that's been adopted by a lot of the other circuits. That specifically holds that if somebody is a corporate officer, which Mr. Roman is in this case, he's a chief operating officer, a president, an owner, a proprietor, a partner, somebody who is in those echelons of the organization, then they would be somebody who could be held out to be the proxy or alter ego of the organization. Let's say we adopt a proxy theory of liability, but we're looking for alter ego. We have to be careful, as the second circuit said, not to let this underminer swallow up Farragher and Ehlers, right, so it's not just any agent. When you've got the number one person at the company, maybe it's an alter ego, a 100% shareholder or something, but this isn't the number one, this is the number two. He was eventually stripped of his financial authority, was banished from physical office, banned from communicating outside work email, so if we're using a corporate law lens, how is someone like that, who ultimately is under the number one, an alter ego? I would answer that question in two parts. First of all, with regard to this set of circumstances, at all times relevant, he was the alter ego of the organization and to this date remains the chief operating officer, the secretary of the board, he has made public television appearances on behalf of the organization and has also, he runs the Philadelphia office as well as other offices. In fact, if you look at Dr. Pipe's testimony, he testified that Mr. Roman was charged with running the day-to-day so that he could focus on writing and research, so I think to that end, I don't think there can be any doubt that particularly at all times relevant, he was the alter ego of the organization. The second point I would draw is that proxy and alter ego are terms that are used interchangeably both in Farragher and Ellers and by all other courts, so it's not two separate standards and I agree with you that we shouldn't allow it to swallow the Farragher-Ellers defense, but I don't think that setting a legal standard that somebody is so high up in the ranks of the organization that they could be considered a proxy or alter ego or acting on behalf of the organization does swallow up the Farragher-Ellers defense. In fact, it's set out in the holding of both Farragher and adopted by reference and Ellers-Ellers doesn't reference it as specifically. I was going to go ahead and discuss something that's made intensive, that's in specific uses I've ever seen them make, of the restatements of agency, and I'm just wondering to what extent is someone, are you saying that apparent authority is enough or the person would actually have to have the actual position of being the alter ego? Does the question make sense? You could have two situations, and here we're talking about Greg, I guess his name is, Greg Roman. It may well be that he actually has the kind of authority where he's not the boss, but he functions as the boss and he can bring to bear the same kind of repercussions on someone he's trying to abuse if they say no to him as the big boss, and there you're clear. But what if there's someone who is not in that actual position of authority, but he likes this, or she likes, what would be he here, likes to swagger and come across as being a big shot, really has not that much authority at all, but makes the employee think that they can bring to bear all kinds of bad things if the employee does not submit. What do we do there? Are you saying that it should go that far, or are you limiting it to the first kind of situation? I do see that my time is up, may I have permission to answer your question? So with regard to that question, I would go right back to Theriger and Ehlers, which specifically state in the holding that they are not attempting to undo the precedent that was set out in Meritor specifically, but rather build upon it. So in Meritor, there was a discussion of the agency principle ad nauseum, and it would be my position that because that is precedent, that's good precedent, that specifically is noted in both Theriger and Ehlers isn't being overturned, that we would follow the precedent that was set out in Meritor with regard to a case like this. Okay, thank you. Good afternoon, Your Honor. Good afternoon. Chelsea Sharon for the EEOC as amicus. The harasser in this case was no ordinary supervisor. Instead, he was second in command of the organization as its director, chief operating officer, and secretary at the board. Do you concede that an ordinary supervisor, as you said, would be subject to ordinary Theriger and Ehlers liability principles? Absolutely, Your Honor, and I think that the courts of appeals that have considered the question, and there have only been a few, have had no problem drawing the line between an ordinary supervisor, which is insufficient for proxy liability, and someone who truly holds extraordinary authority within the employer. What specifically makes him this truly extraordinary individual? Yes, Your Honor. So I think the most analogous case is Townsend. No, the facts of this case. Oh, I'm sorry, Your Honor. Yes. Because here he was second in command of the organization, he answered only to the president of the organization, which is precisely akin to the harasser found to be a proxy in Townsend. He also had extraordinary authority over the day-to-day operations of the organization. He was charged with running the administration of the organization. That was Dr. Pipe's testimony. He was charged with dictating policies for the day-to-day governance of the organization. And he also oversaw a great deal, all of the employees in the Philadelphia office, as I understand it. He was their direct supervisor. And that's just like the harasser in Mellons in Montague, who was found to be a proxy, where he oversaw all the employees in the consumer lending department. So here it's not just— Secretary to the board. I'm sorry, and also— Which is huge. Yes, exactly. And so it's not as though he were just a mere supervisor here, which we do not dispute is inadequate to be a proxy. But he had this additional authority where he was really integral to the running of the corporation—I'm sorry, of the organization as a whole. And I'll also point out he played a critical role in the strategic mission and vision of the organization, so much so that President Pipe's testimony was prepared to step down and let him become the head of the whole organization. So help us to—I mean, this can't be disposed of just by titles. The fact—you know, lots of people get called senior vice presidents. Corporations are full of senior vice presidents, right? That doesn't mean automatic liability here. Help us with some concrete guideposts that will narrow down from the title inflation we have today to figure out who really belongs in this alter ego posture who isn't number one in the corporation. Of course, and I completely agree that looking only to title would not be enough. And in the Johnson case in particular, the Seventh Circuit said, listen, this person has an important title. He's chief of police. But really, he was quite an ordinary supervisor and multiple levels of bureaucracy above him. The secretary of the board could be a title. I keep coming back to that. No, but that's different from executive vice president or senior vice president. You want to get one of those. Of course. Of course. And I do think it's important to note here that he—Pipe testified that he was the—there was no other director like Roman was. It wasn't as though there were, you know, 14 directors and Roman was just one of them. He was his deputy. He was number two. He was—there was no other director like Roman. So, I think that's important in the context of this case. But to address your question about how to parse that out, I think it—I completely agree that relying on title alone would be insufficient and that it's really important to look to what the actual power and control is that the harasser occupies over the organization's affairs. How many people are under his supervision? What kinds of tasks does he have in the organization? Is he able to control its daily affairs and its daily running? And without that kind of actual control, I think it would be inappropriate. It's not enough that you run one department. You're running a department, but there's someone over you who can chew you out, reassign you. The person who's aggrieved could go to that person, like appeal above you in the chain of command. That wouldn't be enough. Agreed. I do want to be careful. I do think that the case law is clear that the proxy is not confined to the number one individual in the organization. We know that from Townsend and in Mons and Montague as well. I think that the harasser also answered to the president. So, it's all right that there may be someone over you who can contravene your decisions. That doesn't make you inherently not the proxy. But it wouldn't be the case that you're just a branch manager or something to that effect. I agree with that proposition. And to your question, Judge McKee, about apparent authority, I do find that the agency law principles are confusing in those cases. I do think that that would be slightly different. As I understand it, the proxy alter ego theory would rely on actual authority. But there is this separate concept of apparent authority, which I think, as I understand it, is under kind of a different provision of the re-theme act. Someone in the position of apparent authority may well be able to do as much, if not more, damage in terms of exerting pressure than someone in actual authority. That's true, and I think it's an interesting question whether they would be subject to the affirmative defense, because I understand that the affirmative defense comes in under subsection D of the restatement, whereas apparent authority is under subsection C. So, I'm certainly not here to brief on that issue, but I do think that's an interesting question. I see my time is expiring, but if there are no further questions. Thank you very much, Your Honor. Good afternoon, Judge McKee, Judge Vestrepo, and Judge Bevis. At least the court, my name is John Cavalier from Jackson-Lewis. On behalf of the respondents here at the Middle East Forum, Dr. Daniel Pipes and Mr. Greg Roman. I'd say you have a very unfortunate name for someone involved in defending a Title VII sexual harassment suit, Mr. Cavalier. Yes, and we will not contest that point. Okay, all right. I don't believe it either. The case comes before the court on the denial of a motion for a new trial, and Judge McKee, I believe it was you who immediately asked the question which standard of review applies here. The standard of review that applies here is abuse of discretion. That's in this court's own words, and this court has repeatedly set forth that standard. I'm quoting from this court's prior decisions. We review the district court's refusal to give a requested jury instruction for abuse of discretion. That's squarely on point to the issue here. Further, denials of motions for new trials by district courts are reviewed for abuse of discretion. So no matter which way you get to the standard of review here, that standard comes back as abuse of discretion. What if... Okay, he's up all of the 15 minutes. What if the refusal to give it is based upon a mistake of the law? It wouldn't be abuse of discretion then, would it? Well, according to the prior precedent of this court, when that occurs, generally speaking, the court instructs not to disturb an exercise of discretion unless there is a clear error of judgment in the conclusion that the trial court reached. So while I do understand Your Honor's question, it's the way it comes up to this court matters. So if, for example, Judge Gallagher had instructed the jury on an incorrect point, if he had issued an instruction that was a mistake of law, then that instruction clearly would be reviewed under the plenary standard or for, as you said, a mistake of law. It's the absence of the instruction that was issued and the following of the model instructions here that makes the difference in the standard that applies. Mr. Cavaliere. Yes. Are all the circuits lined up against you? Has any circuit rejected alter ego liability? So let me say this, Your Honor. I don't know if we are truly disputing the law at issue here. We certainly recognize that under Farragher and Ellerth there is, at the very least, a legitimate subject of discussion as to this issue of proxy or alter ego liability. We acknowledge that. That doesn't necessarily mean you get to the point where a trial judge, simply because a plaintiff raises it as a possibility, is then mandated to give a jury instruction on that point. Okay. So what do you think is the threshold? If someone were the CEO, president, and sole shareholder of some company, wouldn't the judge have to give that instruction? So, Your Honor, I think that under those circumstances the proxy liability theory would apply, but I also think that, again, no matter which way you come at the question of the affirmative defense, it's not going to be available. Because in a situation like that, when the sole shareholder or the CEO or the guy in charge, the one the buck stops with, is also the harasser, there's never going to be a situation where the company, the alter ego, the harasser, are one and the same, and the company has policies and mechanisms in place that can reasonably be used by the employee to report harassment. The harasser, the alter ego of the company, while he's harassing, is not going to reasonably take steps to cure his own harassment. In our view, in a situation like that, when you're truly talking about an alter ego, somebody who would be responsible in a corporate veil piercing analysis or something along those lines, a true agent and alter ego, the federal defense isn't going to apply anyway when that person is the harasser. But here, John, the district court recognized that our model instructions don't include this particular instruction, right? Yes. So he's following what he understands the Third Circuit to tell him to do. Yes. Are you suggesting that that's abuse of discretion review? I'm submitting to you respectfully that the trial judge's decision not to go beyond the model instructions and to issue a requested instruction, on the record here, is a discretionary matter for the trial judge, and that it should only be reversed when that discretion is abused. Notwithstanding the fact that it may have been a legal error. If it was a legal error, you'd agree that it was plenary. If Mr. Roman was, as the court in Farragher used it, I believe it was indisputably within that class of alter egos or true man in charge of the company, and the record supported that notion, and the judge failed to consider it or rejected it out of hand, then I could likely concede on that point that it might be a standard of review different than abuse of discretion. That's not what occurred here. Why would it have to be indisputable? It seems to me that it's a jury question. If the record was in support of finding that he is an alter ego, it's then a jury question. Even though it's disputed, the jury needs to be able to make that determination. So, Judge McKee, that's a great question. I'll answer it in two ways. Number one, it's only a jury question if the record gets them there, and they raised this issue during the motions in Limine and summary judgment stage when they tried to prevent defendants from asserting the Farragher defense at all. The judge engaged with that analysis, requested precedent that would require him to take their view. They failed to deliver it, and he allowed testimony that would go to the Farragher defense at trial. They raised it at the close of trial when we discussed jury instructions. They raised it in their post-trial motion, and each time the judge is asking them, hey, if you can show me precedent that mandates that I give you this instruction, then I will do so. He was looking for third circuit precedent, right? And it's just not there. Correct. Correct. There is no precedent in this court that would compel that jury instruction as a matter of law. And secondarily, the issue of this proxy instruction only matters if the jury found that the plaintiff had carried her burden to show sexual harassment under the standards issued by this – under the model jury instructions or the standards at issue in this court, and if the jury then also found that the defendants established the Farragher-Ellers defense. Here, the jury was only asked one question, one relevant question was put to the jury, and that question is very simply, has the plaintiff proven by a preponderance of the evidence that she was subjected to sexual harassment by the defendant and that this harassment was motivated by gender? If they answered that question, no. From our point of view, that should end the inquiry as to whether Farragher-Ellers played any role in the jury's decision-making process here, and once that occurs, once the jury fails to reach that issue, any instruction on proxy is harmless error at most. Was that the entire charge that was read? That wasn't the entire charge that was read. No. I'm sorry, Your Honor. I'm talking about the question put to the jury, not the verdict sheet. The verdict sheet's tethered to the jury instructions. Well, if they weren't in this case, because if they were, you would typically expect to see a jury instruction – or a verdict sheet here that says, did the plaintiff prove the prima facie elements of her claim? Yes or no. If no, you're done. If yes, go to question two. Question two is typically, do you find by a preponderance of the evidence that the defendant proved that they had a reasonable policy in place to prevent and correct sexual harassment when it occurs? And also, did the plaintiff unreasonably fail to take advantage of those policies? There's no such question here. There's no indication from the verdict sheet itself that the jury found that there was harassment in this case. And without a predicate finding of harassment, the jury never reaches fair or error. And all of this discussion about proxy is a red herring. It's harmless error, at most. How is Middle East Forum defined? Who was the harasser when you say Middle East Forum? So the Middle East Forum is a 501c3 think tank. There's a board of directors, a large board of directors. The board of directors essentially governs the employment of Dr. Daniel Pipes. He is the president. He is the CEO. I heard my colleague here mention that Greg Roman was the CEO of the Middle East Forum. That's incorrect. Daniel Pipes is the president. He's the founder. It's his baby. The buck stops with him. So they're reviewing Pipes probably as being Middle East Forum. Yes. If Pipes was the harasser here, it would be likely a different legal analysis of the proxy issue. I acknowledge that. But we're talking about Mr. Roman as the alleged harasser. Mr. Roman had the title of director. But he had no authority to hire and fire employees. He had no authority to bind the company financially. He had no authority to make major decisions without consulting Dr. Pipes. And for every such major decision that he might have had to deal with, he was instructed and required by the nature of his job to go talk to Daniel Pipes and get his approval for all but the most mundane administrative decisions. I heard an argument that he was a corporate officer by virtue of his title as a secretary. He literally took notes during the board meetings in which he did not participate. This is all in the record. Uncontested. I'd like to talk about that. I've been on several boards where the secretaries were almost equal to the chairperson. It depends on the board and the way the board operates. Yes. We agree with that. And, again, here literally his function was to record notes so that the minutes of the meetings of the board could be compiled. Let's say we think some such instruction is required and we send the case back. What should the instruction contain? Well, let me preface this answer by saying first that even if you were to decide that in a typical case, plaintiff's argument that a defendant, the harasser, is a proxy is enough to mandate an instruction, I would submit to you still that in this case remand isn't appropriate because, again, the jury never reached the affirmative defense in its decision. If setting that aside for a moment, if you're asking me what the contents of such an instruction would look like, I think they would look like the language from Farrar and Eller. They would state that when the harasser is also an alter ego of the company itself, when he stands in the shoes of the company and has unlimited authority over his employees, can hire and fire. Every case that I found, and it was cited by my opponents here, involved a harasser found to be a proxy who had complete authority to hire and fire employees. I think that's a critical piece of this. And I likewise think that the fact that the investigation here was conducted by Daniel Pipes is the exact kind of thing that is important under Farrar and Eller to preserve. If the harasser is also the one who's going to be conducting the investigation as the alter ego of the company, that obviously creates a situation that's untenable under the Farrar and Eller analysis, and that is what Farrar and Eller were trying to prevent in discussing this proxy issue. And so I think the instruction, Judge Meebus, should accord that kind of reasoning and should make sure that the jury is instructed that any proxy analysis must start and end with the idea that the company and the harasser are, for legal purposes, one and the same. Okay, but other than hiring and firing folks, what other touchstones should be included? So, I want to get this very clear because it's an important question, Judge Jekyll. So, in most of the cases that we reviewed, not all, in fairness, but most, the proxy was deemed to be the highest person in command. The typical situation is when you're dealing with a relatively small business who has one guy who's in charge. Everything runs through him. He's either an owner, typically, or a sole proprietor, or a member of a small partnership, or some other equity holder in the business. The vast majority of cases that have been decided by various circuits and districts have involved an employee in that type of context. Again, each of them had, at minimum, the authority to hire and fire employees, which we don't have here. There is one case that was mentioned that we should discuss, mentioned by my opponent, called Townsend, which comes out of the Second Circuit, and involves a vice president who is also the husband of the president of the company, and he was the harasser. In the Second Circuit, after the jury found that there was both sexual harassment of the plaintiff, which, again, I would submit we do not have that finding here, but that jury found that there was sexual harassment of the plaintiff and the finding that the individual was a proxy. That went up to the Third Circuit, and the Third Circuit blessed this idea that in a situation like that, somebody who is the only vice president of the company has the authority to hire and fire, has the authority to run investigations, to discipline employees, that in that context, when added to the idea that he was literally the spouse of the president of the company doing the harassing, that a proxy analysis was legitimate in that situation as well. But that's the only case that I read where, as Judge McKee pointed out, a vice president in more than title was held to be a proxy. Peter, what was the sole question on the verdict sheet? The sole question, the only question relevant that was asked to the jury was, has the plaintiff proven by a preponderance of the evidence that she was subjected to sexual harassment by the defendant and that this harassment was motivated by gender? The jury answered that question, no. What else is there to do, we would ask. It seems, I guess the jury arguably didn't get the testimony, but given the testimony, it's hard to figure out how the jury concluded that there wasn't sexual harassment, especially if you factor in the testimony of Ms. Barbonas. Well, let me say this, Your Honor, in that vein. First of all, the majority of the testimony that the plaintiffs offered in this case, to the extent it could be considered sexual harassment, involved sexual harassment of people who were not the plaintiffs. She was the HR director, and her theory in large part in this case was that she was subjected to a sexually harassing hospital work environment by virtue of the fact that she, as HR director, had to take reports from other employees who claimed sexual harassment. So to the extent the record contains things that, frankly, if you looked at them and put them at face value, would seem to be sexual harassment, they didn't involve plaintiffs. The plaintiff only asserted, as far as I remember, and I was counsel at trial, one clear-cut instance of sexually inappropriate conduct involving her directly, and that conduct was initiated by the plaintiff herself. When she said to Mr. Roman at dinner, you know, I'm not going to F you, right? To which Mr. Roman responded quizzically and asked why she would make such a statement and then changed the subject. Everything else in the record involves allegations by other people and plaintiffs who were permitted to testify by Judge Gallagher, but ultimately that testimony, that evidence, had no bearing on the question that the jury was asked, whether this particular plaintiff was subject to a sexually harassing hospital work environment by Mr. Roman. And I note now my time is up, so if there are no other questions, I will take my seat. Thank you very much. Thank you, Your Honor. If I may begin? Yeah, why don't you start with the question the jury answered. I'm sorry? Why don't you start with the question the jury answered. There was a single question that was put forth to the jury, which was whether or not Mr. Roman was the sexual harasser. However, there was a very detailed fair question. Was it whether or not the defendant was a sexual harasser? It noted Greg Roman specifically, whether there was sexual harassment perpetrated by Mr. Roman. And there was a very detailed instruction that was given with regard to the Farragher-Ellis defense. So we have a very general question that is put forth to the jury after a very detailed verdict charge. And if we look at the brokerage concept case, which is cited, I believe, in our brief as well as in the brief of the EEOC, that case dealt with a similar issue. And in this case, we are dealt with a situation where we have a general question that's being put forth to the jury. One avenue of their verdict could have been that they found that Mr. Roman was a sexual harasser, or they could have found on behalf of defendants because of the very detailed Farragher-Ellis analysis that was provided to them that shifted the burden to Ms. O'Brien. They answered the first question in the negative. They would never have gotten to the other question. They did answer that question to the negative, and that's why we're here today. Because we have no way of knowing what caused that negative answer. And if we look at the brokerage concept case, it says specifically that it is not for the court to divine what the intention of the jury was. We have a jury that was given a very detailed Farragher-Ellis charge, but only had- If you know that Greg Roman did not sexually harass the plaintiff, then do you even get to the affirmative defense? The wording is actually worse for you. Has the plaintiff proven by preponderance that she was subjected to sexual harassment by the defendant, Greg Roman? That his harassment was motivated by her gender? It doesn't then go into, and is the Middle East Forum responsible or anything else like that? So they're just saying she wasn't harassed because of her sex. I know my time is up, if I may have to respond to your question. So the brokerage concept case dealt with a very similar issue, in that there is, as you note, they could have answered a simple no to that question, because they found that there was no sexual harassment. Or if we look at the record and the charge that they were given specifically, which gave them the burden shifting framework, and was the model instruction for the Farragher-Ellis points of charge, without any balancing proxy charge, we have no way of knowing if they found that Greg Roman didn't harass her, or we have no way of finding if there was no liability because of the Farragher-Ellis defense. It was a general question that was put forth. That's not the wording of the question. The wording of the question is, was she sexually harassed, and was it on account of her gender? But that's precisely, I'm sorry, may I continue to answer? That's precisely the issue, and I think that the brokerage concept case speaks specifically to that. That was the only question that was put forth to them, so we have no way of defining what their intent was in answering the question. I don't think that's in your table of authorities. Oh, here it is in the amicus brief of the EEOC, got it. So if I understand you correctly, there was a long charge, and it had seven subparts, seven elements. Yes. And that question was tethered to that charge, and your position is that the charge was not correct because there was no proxy charge included? Yes. We had proposed two different ways of addressing the theory of proxy liability in the charges. The first, as my colleague noted, we had asked the court to simply stop the model instruction before it got to the Farragher-Ellis points of charge. Alternatively, during the pendency of the trial, when the court made it clear that that was not going to be the charge that he was going to give, we argued that there should be a proxy charge that explained what it meant if somebody were, in fact, proxy, and that there was then a strict liability standard. The jury heard, as you'll see, a very specific, the model charge for Farragher-Ellis with no balancing proxy charge, and then had that single question put forth to them, which was simply was there sexual harassment or not, and we have no way of knowing what their reason for answering that was. It could be, as my colleague suggests, simply that they found that there was no sexual harassment, but it could also be that they found that there was a valid Farragher-Ellis defense to which the defendants were not entitled, and we have no way of defining that at this stage in the game, and so it's in our position. I'm looking specifically at the verdict sheet. I don't buy the EEOC's reading that says that the verdict could have been based on attributing harassment to Middle Eastern forum. Nothing about the question says imputing it to Middle Eastern forum. It's all about whether she was subjected to sexual harassment, and it was on account of her gender. So it's like the issue was left out. I'm just not sure. The jury just seems not to have found the threshold harassment, and they stopped. That's it. I'm sorry. May I? No, no. We're well beyond the clock at this point. It's our position that there's no way of knowing that that's what the jury found because they were given the very specific charge on Farragher-Ellis, and they had a single question that was posed to them. Conversely, there isn't any question that I could have asked for that would have been put on that verdict sheet that would have corrected the fact that they didn't receive any instruction as to proxy liability. If I had asked the court to put a proxy liability question on there without them receiving the instruction, that would have been useless. If I would have asked the court to put some sort of follow-up interrogatory with regard to whether or not they met the Farragher-Ellis defense, then I have created a problem with a potentially inconsistent verdict sheet. In your argument, making potential force, if the interrogatory was worded as the plaintiff proving by proponents of the case, then I think you're on solid ground. But they were specifically asked about Greg Roman, and they said no. So did we even get to? In Canada, very candidly, just being honest with myself, I think the Elf legal theory should be the law in this circuit. It makes perfect sense in that, in the appropriate case, the charge should be given. It seems to me the problem here is the threshold showing, according to the jury, was never made because they were specifically asked about Greg Roman, not Middle East Forum. So you don't get to the alternative theory, the Elf legal theory. They're saying, no, Greg Roman, who, per-en, may well be the alter ego of Middle East Forum, and therefore Middle East Forum should be liable, per-en. That's not it. It's just was Greg Roman established by proponents of the evidence to have sexually harassed the plaintiff? That just seems, again, only for myself, to really complicate your argument. And I understand your position on that, Your Honor. But I would submit that there was only that singular question posed to them after a very lengthy Farragher-Ellis charge. So if they want a fine for the defendants, regardless of their rationale, their only method forward is to answer no to that question, regardless of what the question is. And I don't know why they answered no. None of us know why they answered no. They could have answered no because they found that the employer took appropriate subsequent remedial measures, which is a portion of the defense that they weren't entitled to present because there was no proxy question. They could have found that because they found that Ms. Roman didn't give appropriate notice of the harassment, which is, again, a portion of the Farragher-Ellis charge that was read to them. We have no way of knowing, based upon that general question that was put to them, whether they are finding for the defendants based on a finding that there was no sexual harassment or based on a finding under Farragher-Ellis, because they were given that very detailed point of charge under Farragher-Ellis but then given a very general question. And bringing it back to that brokerage concepts case, the facts of that case insofar as the jury instruction versus the verdict sheet, that fact pattern is very similar to what happens here. We repeatedly objected over and over again that there should be either no Farragher-Ellis charge given to the jury or that they should receive a proxy instruction. The court wasn't willing to do either one of those things. At that point, there isn't anything curative that the litigant can do to the jury sheet to bring the proxy liability back into the fold. If I ask them to put follow-up Farragher-Ellis questions on that verdict sheet, then I'm then conceding, first of all, that there is a Farragher-Ellis defense that the jury should be answering to. And second of all, I am creating a... You could take care of that by the way it's worded. Well, I'm sorry? You could take care of that by the way it's worded. You wouldn't have to concede. It could be worded in a way that would not concede it, but yet put the issue before the jury. Sure, but secondarily, I create a potentially inconsistent verdict sheet where if the answer to that first question about Fred Roman is yes, but then they find that there is a Farragher-Ellis defense, I've now created an inconsistency on the verdict sheet where I just won my case because there was sexually harassment and then also lost it on the same verdict sheet. So I'm creating a verdict sheet that is mutually inconsistent and then causing an entire other can of worms. So when the court is telling me they're not going to give any curative proxy instruction, they're going to give the model instruction on Farragher-Ellis and not cut that out, at that point, there isn't much that the verdict sheet can cure for me. Okay, thank you very much. Thank you both counsel for... Thank you. And the final matter is Bruno versus Wells Fargo. Good afternoon. May it please the court. Tim Watson for the appellant, Wells Fargo. Well, it strikes me in seeing the briefs in this case, it's like the law school case, what is chicken? It seems to me here the question is, what is chicken? Well, the question is, what is chicken? Notice to potential plaintiffs. And I'm not sure either side really goes to that. You're faulted for not citing a number of cases, rebellions and other cases in your brief. None of them dealt with the arbitration agreement. So it seems very different than the situation we had before us. But given the limitation of notice to potential plaintiffs, why would employees who are subject to an arbitration clause be potential plaintiffs? I think that's what this case boils down to. Judge, they're not potential plaintiffs in this case because the undisputed record shows that they have signed a binding arbitration agreement and are prohibited as a matter of law from participating in the case. Therefore, they're not potential plaintiffs. I think you said somewhere that this side has conceded the binding nature of the arbitration agreement. But in their brief, they're taking issue with that. Where did they concede that there's a binding arbitration agreement here? And the number we're talking about, 4,000 whatever it is, employees signed that arbitration agreement. Everybody wanted an employment after the date in question. So I agree, Judge, that they do not officially concede that the arbitration agreement in this case is binding. But they have had numerous opportunities at the conditional certification briefing stage, at the 1292B briefing stage, and before this court. And they have never identified any argument or any reason why it wouldn't be binding. And as we've argued in our brief, they've waived that argument. In addition, prior to conditional certification in this case, there were two individuals who opted into the case who were subject to the arbitration agreement. Those individuals withdrew their consents and filed arbitrations. And then after conditional certification, there were 60 or 61 individuals who opted into the case who were also subject to the arbitration agreement. And every single one of those individuals withdrew their consents to join the case. And some of them, a handful of them, filed arbitration agreements. So I guess twofold, there's never been any argument in the court below or in this court, there's never been any argument identified that would call into question whatsoever the arbitration agreement in this case. Four or five federal courts have found that this agreement is straightforward and subject to arbitration. We cite those cases in our brief. And the court below itself stated that Wells Fargo has shown sufficiently that the arbitration HMC's claims are subject to arbitration. So in this case, on this record, that's not the issue. There's no question about the enforceability of the arbitration agreement. That has never been challenged. And for all of the employees, you're talking about the enforceability as everybody in that universe? Yes. Well, yes. The evidence shows it is identified a very finite, specific population of individuals. All of those individuals who were hired after December 11, 2015, all of those individuals hired after that date are bound by the arbitration agreement. So what's the problem with the notice, then? I'm sorry? What's the problem with the notice? Well, I think that's the issue in the case, Your Honor. Does the court have the discretion to authorize notice, to notify individuals of their right to join the case, when the employer has shown as a matter of law that those individuals are barred from joining the case? But the district court writes, in addition, we agree this argument is premature. We have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plans. That's G. Isn't the district court operating under an abundance of caution? Send the notices out. Include a notice that if you're subject to arbitration, you can't play ball here. This will save me a lot of time down the road. You're quoting the language from the district court's order granting conditional certification. In the subsequent order, when the court granted permission for us to pursue this interlocutory appeal, the court, after first recognizing that the arbitration agreement that the individuals in question are subject to arbitration, the court wrote, and I'm quoting here, providing notice to individuals who have no ability to join the lawsuit cannot advance the purposes of Section 216 of the Fair Labor Standards Act because those individuals are not potential plans. I think another point that may be worth mentioning here is you've asked the question in the case, what's wrong with notice? And I think that the two-step process has been around for so long and that the Hoffman-LaRouche decision have been around for so long that it's easy to just think of them as one is the same. But they are separate. The Hoffman-LaRouche deals exclusively with whether, in the first instance, notice is appropriate. Once you make the decision, as you suggested, that what's wrong with just sending notice and then dealing with it later, you've skipped over Hoffman. Hoffman doesn't say whether or not it's appropriate. Hoffman talks about the court having the discretion to send out notices in certain cases. It's all about the discretion of the district court. And the argument here is whether or not the court abused the discretion. They're saying that Hoffman is the very case by which the district court had the discretion to send out notices. So just saying Hoffman doesn't help us. Exactly. Well, the question under Hoffman is, does the court have the discretion? And in this situation, as the Fifth Circuit and the Seventh Circuit have both held, a court does not have discretion to send notice to people who are categorically barred from joining the case. So Hoffman is directly on point. Hoffman sets the limits or the boundaries that govern a court's discretion to send notice in the first instance. And in this case... What would be wrong with a notice sent to everybody with language that if you sign an arbitration agreement, you can't play ball? What would be wrong with it is all of the reasons that justify sending notice and all of the reasons that Hoffman gives for not sending notice, as both the Fifth Circuit and the Seventh Circuit found in J.P. Morgan and the bigger case, all of those reasons would be contradicted, would go against sending notice, and sending notice would give rise to or contribute to the potential misuse or dangers of giving notice identified by Hoffman. And I can run through those reasons if you would like. I want you to separate two different things. First of all, in the usual case, the situation will be, we're not sure if you're part of the class or not, and so we're sending notice to potential players, right? And you're taking the position that courts ought to sort this out before they get to that stage, but there's one way of looking at it where we're in a position we're not sure. But this case is unusual because it's a second situation where the court already made a preliminary determination that they can't be plaintiffs because this is enforceable, but it goes and sends out notice anyway. And so I think that the conflict with the Fifth and Seventh Circuit is really acute and clear if you've done what the district court did here, right? I think there's still a potential conflict with the Seventh Circuit in the first situation, just because you seem to be saying you have to sort it out up front versus the maybe we can wait, we can sort it out. But help us to figure out, you know, you don't need both of these things to win. Why should the court have to sort this out? If the court has sorted it out and says you're not a member, I think there's a much bigger problem with saying you can nonetheless have the power to notify people you're already found are not members of the class. But why should the court have to decide that up front? I agree wholeheartedly with everything that you said. And what you described in this case is more like bigger, where in bigger, the plaintiff official... I'm not sure the question helps you. I didn't interpret the question. It's helping. Maybe I misunderstood the question. Well, maybe I did. I thought the question... That question, the court should not initially decide who's in and who's out, but just send the notice. The court would be able to exercise its discretion to send the notice to everybody and then sort things out down the road. What's unusual in this record is that this court said, well, I'm finding that they're barred, but I'm going to send the notice anyway. But usually that won't be the case. Right, exactly. And that's exactly right. And that was the situation in the J.P. Morgan case. The plaintiff officially represented to the court that the plaintiff was not contesting the validity of the arbitration agreement in that case, but the court nonetheless then addressed for future cases... Should they have the opportunity to contest that? Should the persons who tentatively signed the arbitration agreement, should they have the opportunity to contest that, which is the opponent's position? They're not being denied... The district court made that finding without any opportunity of the plaintiff's involved to be heard or to contest it. The plaintiff involved will have the opportunity to... If the defendant, if the employer presents evidence of an enforceable or an arbitration agreement that the employer says, we've got an arbitration agreement here, we think it's enforceable, and therefore notice should not be sent to this group of individuals, then yes, the plaintiff has the opportunity to step in and say, well, wait a minute, that's not enforceable for X, Y, and Z reasons, and so therefore notice should go to those individuals. Did I answer your question? I'm not sure. I was trying to figure out how they'd even know about it, how the absent class people would even know about it. The absent class members may or may not know about it, but the plaintiff, you may be raising a standing question, but the... I think they're counting it in terms of a due process. Maybe I'm missing something. No, I think you're right. It's a standing and due process are both related in this situation. How would people know about this class if they're not given notice that it's out there? Well, again, that's the question. Are they entitled to notice? And courts deny conditional certification all the time, and in those situations the absent class members don't get notice. And the question, again, is are they entitled to notice? And in this situation, on this record, Hoffman-LaRouche is clear that they're not entitled. Thank you, Hoffman-LaRouche, because they're not entitled. I'm looking right now at the five steps or tests or inquiries that the court laid out to determine whether or not notice should be given. I don't see it as being all that clear. It's simply a method of sending forth an inquiry the district court should undertake to determine whether or not to give notice. But I'm not sure it's that clear that they're not entitled to notice. You can say under the facts here, perhaps especially given what Jodi Davis just commented on, the fact that there's an initial determination that they're bound by arbitration agreements. That would be one of the considerations that would come in under the five steps under Hoffman-LaRouche. But Hoffman-LaRouche by itself, I just don't see it as being all that clear that they're not entitled to notice. Well, that's exactly what J.P. Morgan and Bigger go through. They methodically go through all of the reasons for giving notice and all of the reasons for not giving notice to people who are potentially bound by an arbitration agreement, and they come out on the side of, no, there's no discretion to do so under Hoffman-LaRouche. And I'm more than happy, either now or in rebuttal, to go into each of those specific reasons if the court would like. I'm looking at the steps now. Isn't the threshold lower in our circuit? Isn't it just that the conditional certification requires only that the plaintiff make a modest factual showing? That is absolutely the question under the two-step process, and we're not here to challenge the two-step process. But again, Hoffman and the two-step process are different animals. And what you're suggesting, I believe, is that you go through step one, and it's very modest, and you just go through it, and then you go to step two. But then you, in doing so, you have completely skipped over Hoffman. There's a gazillion cases that talk about the two-step process. That's assuming there's enforceable arbitration agreements. Correct. And I think plaintiffs are taking a position that you don't know that yet. Excuse me? I think plaintiffs are taking the position that you don't know that yet, and you have due process issues. That's my guess. Well, right, but the due process issue is clear. There's not a due process issue. Any time, the ultimate enforceability of the arbitration agreement is not being determined. All that's being determined at stage one is does notice go out, right? And the plaintiff can make that argument, and the absent class members, their due process rights are not being violated because the ultimate enforceability of the agreement is not being determined. So any time a court denies conditional certification, you could say, I mean, based on that argument, you could say, oh, you're violating the due process rights because they didn't have an opportunity to be heard. But that's not what's being determined here. To me, that's a clear non-issue. Thank you. Mr. Severus? Thank you, Your Honors. Jeff Severus for Plaintiff Appellate Sandra Bruno, arguing in favor of affirmance of the district court's order authorizing notice to all of Wells Fargo's HMCs, including those that Wells Fargo claims are bound by arbitration agreements. And I think Judge McKee started off by saying that this case is all about whether these are potential plaintiffs. And I think that if it's okay, I'd like to take a step back because Plaintiff Bruno's position throughout this litigation with respect to, for example, whether to put in evidence suggesting that the arbitration agreements were not properly formed with the absent class members or other evidence relating to the validity or enforceability of the arbitration agreements really goes to the overarching legal framework here. And Plaintiff Bruno has stood by that overarching legal framework throughout the district court proceedings and here as well. The district court, when it reached its conclusion that is under review here, which was the order granting conditional certification, applied this court's usual standard for conditional certification, whereby notice is authorized to current and former employees for whom the plaintiff makes a modest factual showing of a factual nexus between the manner in which the employer's alleged policy affected the main plaintiff and the manner in which it affected other employees. That governing legal standard was crafted by this court to implement the general case management power that was recognized in Hoffman and LaRoche, and it's been applied routinely by district courts in this circuit in ruling on motions for conditional certification to determine which employees will be given notice of the lawsuit. Do you agree that there is a valid and enforceable arbitration agreement between the employee and the employees that came under whatever that date that is? I don't have it in front of me right now, but that date was probably six years ago. That anybody that came in after that did sign and is subject to a valid arbitration agreement? No, Your Honor, we do not make that concession. We never made it in the district court. I believe my colleague acknowledged that we never made that concession in the district court. But the district court made that finding. I don't think so, Your Honor, and I believe to Judge Bevis' point and question earlier. Did the district court make this finding? And that is not how we read the procedural history below. In the order authorizing notice, which is the order that Wells Fargo has reviewed here, the district court expressly says that issue is premature. It says that issue is premature. We're going to defer that issue until after we send notice so that the individuals whom Wells Fargo claims are bound by those arbitration agreements can come before the court. They'll have notice opportunity to contest. And then there's a line in the district court's subsequent order, which is an order authorizing Wells Fargo to file a petition for interlocutory review. And I think Wells Fargo is saying they want to read that as a order reconsidering the prior decision and making a finding that is contrary to the earlier decision. And that is not how we read that second order. If that were the actual upshot of the district court's second order, where it's authorizing a petition for interlocutory review, the district court presumably would have reached a different outcome, reconsidered its earlier opinion, and not issued notice. And we would have been the ones trying to seek an interlocutory appeal. We construe that passage of the second order, which is only authorizing a petition for interlocutory review, as summarizing Wells Fargo's side of the issue and providing a reason that the district court would stay its order, authorize notice to all the HMCs, and authorize the petition for interlocutory review that led to this appeal. We do not read the district court's orders as making a finding that there was an enforceable agreement between Wells Fargo and these 3,900 individuals that Wells Fargo has not even identified in the record. It hasn't put in the arbitration agreements and refuses to disclose these individuals in discovery so that there can be adequate discovery related to these supposed arbitration agreements. So, no, we didn't make the concession in the district court, and our position is that we don't have to engage in that discovery prior to notice. And we base that on this court's conditional certification standard, which has been upheld and applied routinely over the last decade. And Wells Fargo says it's not contesting that legal standard, but let's think for a moment about what Wells Fargo is arguing broadly in this appeal. It doesn't contest, it doesn't suggest that the district court, if it applied the correct legal standard, abused its discretion in the application of that legal standard to the evidence. So I think the way you're reading the record would make a lot of sense, but I want to know what to make of page 6, note 3 of the second opinion. This is JA 2203. It ends with, based on the clear language of the arbitration agreements, at this stage, Wells Fargo has sufficiently shown the arbitration HMC's claims are subject to arbitration. The parties to that agreement agreed to be mutually bound thereby. The agreement is a condition of employment. That does look like the court has resolved this issue. Is there a different way to read the Wells Fargo has sufficiently shown that doesn't render this notices beyond their power? Yes, Your Honor. I think reading that in connection with the overall procedural history of the two orders. If that were the finding by the district court, and he meant it to be a finding on which his rulings were based, as opposed to an articulation of the reasons that he finds substantial ground for disagreement and reasons for interlocutory appeal, then he would have reconsidered his order. He would have reversed it because it is directly contrary to what he found in the order granting the motion for conditional certification in which he said this is premature. And there is no order reconsidering that prior order. And the two statements, I give you that certainly, I think they are irreconcilably in conflict. The judge says in his order granting conditional certification, this is premature. Look, earlier this afternoon we had an immigration ruling which the immigration judge seemed to say one thing and then seemed to say another. And we don't rewrite it so as to harmonize it. We say there is a problem here and let's take at face value the part of it that doesn't appear to fit. Well, I think that if we did take the part of it that doesn't fit out of it, it would be what Your Honor is describing as findings in an order that was solely deciding whether to allow a petition for interlocutory review. That is not an order to reconsider in the prior order. And if it had been framed as a reconsideration of the prior order, I would have to agree with you. But that is just an order granting permission to file an interlocutory appeal. And throughout that opinion, the judge is summarizing why there are substantial grounds for disagreement, why the other elements of interlocutory review are met. And he doesn't suggest at all that he is reconsidering his prior order granting the motion for conditional certification because the arbitration issue is premature. And even at the end of that second order, he says that his prior order is stayed. He doesn't say the prior order is reconsidered. He says the prior order is stayed. And in so doing, stands by his order granting the motion for conditional certification under which the arbitration issue is premature. And with respect to this supposed concession that Plaintiff Sandra Bruno never made, the key issue still here is what is the procedural framework and why is it that Plaintiff Sandra Bruno stood by this position that she does not have to put in evidence rebutting Wells Fargo's claim that there are arbitration agreements with these 3,900 individuals. And this goes back to, again, the broader legal framework here, which is that this court has time and again issued rulings identifying what the standard is for district courts in ruling on a motion for conditional certification. And think about what Wells Fargo wants this court to rule, which is what the Fifth and Seventh Circuits have essentially ruled. They want this court to rule that the standard for a district court to follow when ruling on a motion for conditional certification is that the district court can authorize notice to all individuals for whom the plaintiff has made a modest factual showing that they are similarly situated by reason of a factual nexus in the policies affecting the named plaintiff and the policies affecting the other employees unless the employer opposes the conditional certification by claiming that some of the similarly situated employees are bound by arbitration agreements, in which case the district court should apply a burden-shifting framework and a preponderance of the evidence standard to assess the validity and enforceability of the alleged arbitration agreements in order to decide whether to send notice. That's the standard that comes out of the argument that Wells Fargo is making. And that is squarely forbidden by the Supreme Court's recent decision in Morgan v. Sundance. The legal standard that Wells Fargo wants this court to adopt is we have our normal standard for conditional certification unless the employer asserts that there's arbitration agreements with some of the people who aren't before the court. And then we do something else. That's the upshot of Wells Fargo's argument. And the Supreme Court in Sundance says that is forbidden. It's a very... I mean, this conditional certification in general is a very strange thing because it's not required. It's not a real certification the way you do in a Rule 23 class action or something like that. It's just a kind of useful, helpful step. So you may be right. I think Morgan does indeed limit our ability to kind of come up with new procedural rules. And I just don't understand how the Seventh Circuit kind of got by that. But it's just a strange beast we're dealing with here, which is, I think, part of why the Seventh Circuit was reaching there. Well, absolutely, Your Honor. It is a strange beast. But I think that the reason the Second Circuit could come out the way it did is that Morgan v. Sundance hadn't been decided. And for this court, when it's considering, you know, am I creating a circuit split? Absolutely not. Morgan v. Sundance was decided a few weeks ago in late May. Now, that is after the Fifth and Second Seventh Circuits issued their decisions in J.P. Morgan v. Biggers. And if those courts had the benefit of Morgan v. Sundance, which I think as Judge Bevis may have said, you know, prohibits courts from crafting these specialized procedural standards where the employer asserts an arbitration agreement, we submit that those cases would come out the other way. And this court does not need to create a circuit split at all here. It can find under Sundance that Sundance aggregates the Fifth and Seventh Circuit's decisions in Biggers v. Facebook, that Sundance prohibits this court from deviating from its ordinary standard for conditional certification, the district court applied this court's ordinary standard for conditional certification, there was no abuse of discretion in the application of that standard to the evidence, and affirmed. That is how we see this case after Morgan v. Sundance comes down. With respect to whether these folks are potential plaintiffs, they absolutely are potential plaintiffs. And the argument that Wells Fargo makes under Hoffman LaRoche is that because they're not potential plaintiffs. But the phrase potential plaintiffs in Hoffman LaRoche refers to the individuals to whom notice is sent or may be sent. And Hoffman says proposed plaintiffs. Could be wrong about that. No, I'm sorry. The other cases say proposed plaintiffs, and that one in the cases that you cite, where Hoffman does say potential plaintiffs. And your Honor, I think, is identifying that there's some dissonance in the language that's used in some of these decisions, and so I think it makes sense to look at the substance. And the substance of potential plaintiffs in Hoffman LaRoche is, who are the people to whom the district court is authorized to send this notice? And Wells Fargo strains to contend that this court has never clarified the question of exactly to whom is the district court authorized to send notice, but this court has answered exactly that question, most notably in Zavala and Hallie, by establishing the governing standard for conditional certification. The whole point of this court. There's no arbitration. That's what troubles me. The stumbling point here, the difficult part is, it's not an analogous case, because there wasn't an issue about whether someone had waived the right to take it into court by entering into an arbitration agreement in those cases that you're relying upon. Well, Your Honor, I think what you're describing is a possible reason to create an exception or an extension of this court's governing standard for conditional certification, and that runs into Sundance. Sundance says don't do that. When the employer asserts an argument that there's 3,900 people that it doesn't identify who are bound by arbitration agreements, that is not a basis for changing this court's ordinary standard for conditional certification, which is exactly what Sandra Bruno submitted evidence on and what the district court ruled on. And would this proposed notice include language to potential plaintiffs that if you sign an arbitration agreement, you're not entitled to participate? Well, it absolutely could, Your Honor. And in practice... Would it solve the problem? We think so, certainly. I mean, it certainly would solve the problem of creating a misleading notice. I think nobody wants to do that. In practice, these notices are negotiated between plaintiffs' lawyers and defense lawyers and then submitted to the court. And if well as far as there's concern, I think we all want to send out a notice that is not misleading. It's very objective that the notice has to be neutral, can't suggest anything about the merits of the claim, and that's very clear. Absolutely, Your Honor. I think there's two ways that the notice would not be misleading. One is that as it is customarily drafted, it tells everyone that receives the notice, there's no guarantee you're actually allowed to be in this case. There's lots of reasons that people get the notices. It could be erroneous bookkeeping by the employer. There could be special circumstances. There could be a decertification later in the case. There's lots of reasons that somebody could receive notice, file a claim form, and then get bounced from the case. And really, a motion to compel arbitration after notice is sent is no different than that. Or the notice could provide specific language that says, Wells Fargo has asserted that there's an arbitration agreement binding you, and unless you can contest that arbitration agreement, don't join. So there's definitely ways to handle and avoid being misleading in the notice itself. And this potential plaintiff argument that Wells Fargo makes, it also presupposes that the employees whom Wells Fargo claims are bound by arbitration agreements are in fact so bound. And we make the due process argument in our brief just to make it really clear. At this stage of the proceedings, when the people, the alleged counterparties, are not before the court, the district court cannot rule as a matter of summary judgment, as a matter of law, as a declaratory judgment, any of those things, that these people are actually bound by arbitration agreements. To the extent that there's a suggestion in the district court's order that he has concluded these arbitration agreements exist, they're valid, they're enforceable, that does violate due process because the people, the alleged counterparties, are not even before the court, and they don't have an opportunity to respond. Your Honor, I see that my time is up, and so I think I will close it there and submit the rest on the briefs unless there are other questions. Thank you. I guess I would like to take a step back and talk about what the plaintiff is proposing the rule should be. The plaintiff is proposing that notice can be sent to an entire population of people when we know before sending notice that those people are going to be advised of their right to join a case when they are barred as a matter of law from joining the case. That depends on the language of the word. That depends upon the wording of the notice. The notice does not have to say that at all. The notice simply informs them that a case is being brought. It could be worded in such a way as to say, if you signed an arbitration agreement, you are not entitled to join in that case. Or it could say, if you've signed an arbitration agreement, that you do not dispute. That language would have to be worked out as was suggested. Well, a couple of points to that. First, that argument was never raised at the district court. Which argument? The notice, the revisions to the notice to make it acceptable. That seems to be a given. I'm not sure why they'd have to make that argument. That's obvious. The judge is not going to send out notice which is misleading or would suggest anything about the merits of the case or whether or not a person receiving the notice has the right to join in the lawsuit. The judge is not going to send that. Well, my point is that at the district court, we briefed this issue fully in this idea of altering the notice language. They suggested sending out in the brief in this case, in this appeal, they suggested altering the notice to have two notice forms. My point is just a simple waiver point that this point was never raised at the district court even though we raised J.P. Morgan, we raised Bigger. It seems to me the court would have to do it on its own anyhow. The court's going to have to be satisfied with the language of the notice. But the larger point, and back to my first point, is in this case, and this gets back to Judge Bevis' question and what the condition of the record before the court. The court issued its original conditional certification order and then it's issued its order granting leave to pursue this interlocutory appeal. And the court, as Judge Bevis pointed out, found in footnote three that Wells Fargo has sufficiently shown that the arbitration agency's claims in this case are subject to arbitration. What do we make of that sufficiently shown? Maybe that's enough that it kind of tees up, raises, or preserves the issue. Does it mean that it's proven for the rest of it? It says, therefore, absent evidence to the contrary, the agreement should be enforced. But, you know, it is a point in the first ruling the court said, we're going to issue a notice, we don't know. It's just a very strange record here. Well, again, the plaintiff has had every single opportunity at the court below, at the conditional certification stage, at the 1292B stage, and on appeal to give any reason why the arbitration agreement wouldn't be enforceable. And they have never offered that reason. They stand by their position that they can ignore that and simply have the court distribute notice to people who are barred, as a matter of law, from joining the case. That's no different from sending notice to people who are barred by the statute of limitations. That's absolutely no difference, right? You could send notice to an entire group of people, thousands of people, barred by the statute of limitations, and the notice could say, by the way, the employer may assert a defense of timeliness to your claim, just be advised. Hoffman commands that there are some limits. How you would? You're suggesting a notice which kind of is a wink and a nod. The notice could also say, it appears to anything on this record, your claim is barred by the statute of limitations, but we're informing you of this claim nevertheless. That's a wholly different message. Again, you work that out with a disrecordant. I'm sorry, how is that different? If the notice says, your claim may well be barred by the statute of limitations, but we're informing you of the claim, that's a communication to the person, your claim is probably gone, as opposed to saying, you may well be able to join this suit even though you signed an arbitration agreement, which is the way someone could interpret the language that you gave. But in this case, there is no, as the court below wrote, there is no evidence. There's no reason to believe that the arbitration agreement in this case is not enforceable. And the plaintiff is asking for a rule that says an employer can come into the court and demonstrate unequivocally, as Wells Fargo has done here, that its agreement is enforceable and that these people are barred from participating in the case, and the plaintiff can sit back and say, we're not going to talk about that. Even if we have no basis to contest the enforceability of that agreement, we're not going to do anything because we don't have to, and even though it's a simple agreement, and like Wells Fargo's agreement, it's been enforced by five separate federal courts, it's never been called into question by anybody, including the plaintiff. We can sit back and say, we're not even going to talk about that agreement, just send notice. That violates Hoffman-LaRouche. Hoffman-LaRouche says courts do not have that discretion. They don't have unbridled discretion. If they're sending notice to people who are barred as a matter of law, then they have jeopardized judicial neutrality, they have slipped over into the solicitation of claims that is expressly prescribed in Hoffman-LaRouche. Soliciting claims if the notice includes language that you can't come here if you've signed an arbitration agreement. How's that soliciting claims? Well, in J.P. Morgan and in Bigger, it invites people to join the lawsuit when they have no right, or to file hundreds of different litigation procedures. That doesn't answer his question. I'm sorry? That doesn't answer his question. Given the language that he suggested, how does that invite people to solicit claims that the court's going to tell them they probably don't have? I guess the question then would, why would you send notice to people advising them that they are not allowed to join the case? But that's exactly what we would be doing here. In the event there might be somebody whose agreement is not enforceable. Well, if that were the case. There may be someone out there whose agreement is not enforceable who needs to know that this is proceeding. Well, that's no different from saying that in this case, for example, the court sent notice to 4,000 people who were HMCs that did not have arbitration agreements. But what's the difference between that and saying, well, there may be people out there who were in the HMC position, but Wells Fargo made a mistake and it wasn't included in the people in there, in the group of people identified by Wells Fargo, so we're going to send notice to everyone at the company, just in case somebody might have held the position of HMC. In other words, we're going to send the notice to hundreds of thousands of people on the outside chance that maybe somebody held the HMC position and Wells Fargo made a mistake in identifying the population who did. If there's no more questions, I appreciate the court's time. Thank you. Can we get a transcript of the argument? And I'll ask Wells Fargo to pay for the cost of the transcript, given the equities here.